UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07CR646 RWS |
| ) | |
| ANTONIO L. DAVIS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the Defendant's motion to suppress evidence and statements on March 24, 2008.

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Dan Book is a police officer with the Metropolitan St. Louis Police Department. On June 26, 2007, Book was on patrol with his partner Andre Rogers in the Walnut Park neighborhood of St. Louis. He and his partner were in full uniform driving a marked police vehicle.

At about 9 a.m., they observed a Geo Prism automobile drive by them, and observed that the vehicle had no front license plate. As the vehicle passed them, they also saw that the car was driving erratically, and was weaving from lane to lane on the street. Because of the above traffic violations, including the driver's erratic behavior, they activated their emergency lights in an attempt to curb the vehicle. When they activated their lights, the Defendant did not stop the Geo Prism, and instead kept

driving forward committing several traffic violations, including running a red light at the corner of Lillian and Goodfellow Avenues.

Eventually, the car slowed down and Book and Rogers believed that the driver was about to "bail out" of the car and run from the officers on foot. As the car reached Theodore Street off of Riverview Boulevard, the car slowed down even more, and Book observed the driver's door open, and a male jump out of the door while the car was still moving forward. The individual fled down an alley while apparently holding some object in his waistband with both hands as he was running.

Book chased the driver down the alley, while Rogers stayed with the Geo Prism in an attempt to stop the car or at least observe it until it came to a stop. At this point, Rogers notified the dispatcher that Book was on foot pursuing a person by himself and that the officer believed the person may be armed. As Book was running after the driver, he ordered him to stop and identified himself as a police officer, but the driver ignored his orders. Book finally caught the driver and tackled him in a yard just off the alley. As Book caught the driver of the vehicle (who was later identified as the Defendant), he observed the driver remove a metal object from his waistband and throw it with both hands out in front of him.

As Book handcuffed and detained the Defendant, he asked the Defendant why he had fled from him. The Defendant stated he had fled because had drugs in his pocket, and did not want to be arrested in possession of them. The Defendant indicated with his head which pocket contained the drugs. Book asked the Defendant if there were any sharp objects in the Defendant's pocket that would poke Book if he retrieved the drugs. When the Defendant stated there were no such sharp objects, Book retrieved a pack of Kool cigarettes from the Defendant's pocket. He observed that

2

the Kool cigarettes contained two rocks of cocaine under the clear plastic cellophane wrapper of the package.

After Book observed the drugs, he placed the Defendant under arrest for possession of narcotics, and read the Defendant his full Miranda rights from a police department advice of rights form. He asked the Defendant if he understood his rights, and the Defendant said he understood them.

After the Defendant was fully secured, Book searched the area of the backyard for the object he observed the Defendant discard. About five feet from where Book tackled the Defendant, Book retrieved a .9mm semi-automatic pistol. The Defendant was then also charged with unlawful use of a weapon. The Defendant was then taken to the police station where he told Book that he wanted to cooperate with him on the drug case, but Book said, "Nothing came from this."

Book also testified that he was going to search the area of the backyard for the object that he observed the Defendant discard even if the Defendant had said nothing to him about the drugs and the drugs had not been found prior to the search for the gun. Book stated that after he had found the gun, he would have arrested the Defendant for unlawful use of a weapon and searched him incident to this arrest. Book stated he would have discovered the crack cocaine in plain view under the cellophane in the Kool cigarette package during the search incident to the arrest.

**Conclusions of Law**

A. Stop and Arrest of the Defendant

Based on the above facts, the undersigned concludes that the initial stop, detention, and arrest of the Defendant was lawful.

Initially, the undersigned notes that prior to even activating emergency lights on the police vehicle, the officers observed at least two traffic violations-- that the Defendant had no front license plate, and that he was weaving from lane to lane and driving erratically. The Supreme Court has held that any traffic violation, no matter how minor, is sufficient cause to stop and detain an individual consistent with a traffic stop. See Whren v. United States, 116 S.Ct. 1769 (1966); United States v. Maza, 93 F.3d 1390 (8th Cir. 1996).

In addition, the undersigned concludes that there was probable cause to arrest the Defendant at the time he was tackled by Officer Book and handcuffed. Probable cause is a "fluid concept-- turning on the assessment of probabilities in a particular factual context--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, the Supreme Court has stated, "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 176 (1949). Further, police officers may arrest a person without a warrant if they have probable cause to believe that a crime has been committed, and that the person arrested has committed the crime. Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). In the context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been committed and that the defendant committed it. See Gates, supra. Based on the above, the undersigned concludes that probable cause was shown to arrest the Defendant. Prior to tackling and handcuffing the Defendant and arresting him, Officer Book and Officer Rogers observed the Defendant flee from their vehicle after they had activated their emergency lights; run at least one red light at a busy intersection while fleeing their vehicle; drive in a careless and reckless manner while

4

fleeing from their police vehicle; abandon the vehicle while it was still moving forward, thus, creating a dangerous situation, and fleeing from them on foot in a manner which led them to believe that he was armed. In short, the officers personally observed the Defendant commit at least three serious criminal offenses which endangered the safety of the public as well as the safety of the police officers. Based on this, the undersigned concludes that there was ample probable cause to arrest the Defendant.

B. The Statement of the Defendant as He was Being Subdued

Based on the above facts, the undersigned concludes that the Defendant's statement that he had drugs in his pocket and was fleeing for that reason was lawfully obtained pursuant to the "public safety" exception to the Miranda rule as enunciated in New York v. Quarles, 467 U.S. 649 (1984). Under the New York v. Quarles exception, a suspect's answers to questions from a police officer are admissible in the absence of Miranda warnings even if the Defendant is handcuffed so long as the questions asked of the subject are "reasonably prompted by a concern for public safety." New York v. Quarles, 467 U.S. 649, 656 (1984); see also United States v. Liddell, 517 F.3d 1007 (8th Cir. 2008).

Further, in the case of United States v. Williams, 181 F.3d 945 (8th Cir. 1999), a case which is analogous to the case now at bar, the defendant was arrested and placed face down on his bed and handcuffed. Prior to being advised of his rights, the arresting officer asked him, "Is there anything else we need to be aware of?" In response, the defendant told him that there was a gun in the closet. In upholding the question and answer as within the public safety exception, the Court stated as follows:

> The court believes that public safety concerns were an issue in this case. Although Williams' hands were cuffed behind his back when the officers asked him if they

5

needed to be aware of anything else, the officers could not have known if any armed individuals were present in the apartment or preparing to enter the apartment within a short time period. Similarly, the officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way. Therefore, the district court did not commit error by admitting Williams' statement identifying the location of the gun.

181 F.3d 945, 953, 954.

Further, in holding that questions from a police officer need not be related to weapons but only related to public safety even though not asked in that form, the Court stated as follows:

> . . .the question sought information related to weapons or other safety concerns. The fact that the question was also broad enough to elicit other information does not prevent application of the public safety exception when safety was at issue. Moreover, we believe that conditioning admissibility or evidence under the public safety exception on an officer's ability to ask questions in a specific form would run counter to the Quarles Court's decision that an officer may forego announcement of Miranda warnings when public safety is threatened. The Quarles Court believed that the value of the Miranda warning was outweighed by safety concerns in situations "where spontaneity rather than adherence to a police manual is necessarily the order of the day." Quarles, 467 U.S. at 656. . . Under the circumstances of this case, the concerns for safety of the officers required a spontaneous inquiry by the officer.

United States v. Williams, 181 F.3d 945, 954 n.13.

In addition, Williams noted that the officers did have information suggesting that Williams may have possessed firearms or explosive devices. See also United States v. Luker, 395 F.3d 830 (8th Cir. 2005) (questions of arrested persons known to be drug users whether anything could stick or poke the officer when performing a pat down search and asking whether there was anything in the arrested person's vehicle that should not be there, held within the exception of the public safety requirement).

Based on the above law, the undersigned concludes that Officer Book's question to the Defendant as to why he was fleeing was subject to a lawful exception to the Miranda rule. After

6

fleeing from the police in the manner which endangered other drivers and pedestrians by running red lights and driving in a careless and reckless manner, the Defendant abandoned his vehicle while it was still going forward. Because of this, it was necessary for Book to chase the Defendant alone and on foot while Rogers attempted to stop the vehicle. The manner in which the Defendant was running holding something in his waistband apparently alarmed Rogers to the extent that in calling in for assistance, he stated that Book was in pursuit of the Defendant on foot, and that the Defendant was possibly armed. When Book finally caught up with the Defendant, Book was alone with the Defendant in a backyard just off an alley way. Just as he tackled the Defendant, he observed the Defendant discard a metal object which apparently could have been a handgun. When Book was finally subduing the Defendant, he asked the Defendant why he was running. In doing so, the undersigned concludes that Book (just as the officers in Quarles) was asking the Defendant a question "reasonably prompted by a concern for public safety." Quarles, supra. at 656. The undersigned concludes that Officer Book was in an imminently dangerous position and needed to know as soon as possible why the Defendant had fled from him in such a dangerous manner. Although Book did not ask the Defendant specifically if he had a gun, the undersigned concludes that Book's question was directly related to both his safety and the public's safety in determining why the Defendant had evaded him in such a dangerous way, and that the purpose of the question was to obtain this information and was not a general question asked for the purpose of obtaining evidence of any criminal violation. Thus, the undersigned concludes that the Defendant's answer both as to the fact that he had drugs in his pocket and that there was nothing that would stick or harm Book were within the Quarles exception and should not be suppressed.

As stated above, the undersigned concludes that the question to and answer of the Defendant immediately after being arrested should be admissible pursuant to the public safety exception. However, the undersigned further concludes that even if the Defendant's statement should be suppressed as being an unwarned custodial statement, the items found in the Defendant's pocket and the gun should nonetheless not be suppressed. In allowing the introduction of physical evidence discovered as the result of a potentially illegal statement, the Court stated as follows:

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means--here the volunteer search--then the deterence rationale has so little basis that the evidence should be received.

Nix v. Williams, 467 U.S. 431, 433 (1984); see also United States v. Martin, 982 F.2d 1236 (8th Cir. 1993). In United States v. Connor, 127 F.3d 663, 667 (8th Cir. 1997), the Court stated that evidence otherwise discovered through an illegal confession should be admitted if the Government proves by a preponderance of the evidence that 1) there was reasonable probability that the evidence would have been discovered by lawful means, and 2) the Government was pursuing an alternate line of investigation at the time of the violation.

The undersigned concludes that almost the exactly the same situation exists in the case now at bar as existed in United States v. Connor, supra. In the case now at bar, Book testified that whether or not the Defendant had told him anything about the drugs in his pocket, Book would nevertheless have searched for the gun after the Defendant was handcuffed, and, once finding the gun, would have subjected the Defendant to a thorough search incident to his arrest in which Book states unequivocally he would have found the drugs. Therefore, the undersigned concludes that because Book was actively pursuing a line of investigation that would have led to the gun and a custodial

8

arrest of the Defendant, he would have inevitably discovered the drugs and they should not be suppressed even if the statement is found to be unlawfully obtained.

### C. Seizure of the Firearm

The undersigned concludes that Book's seizure of the firearm from the backyard of the scene of the arrest was lawful because the Defendant abandoned the weapon as he was being arrested by Book. Warrantless searches and seizures of abandoned property do not violate the Fourth Amendment. See Abel v. United States, 362 U.S. 217, 241 (1960). By voluntarily abandoning property, an individual forfeits any reasonable expectation of privacy in that property even if he or she retains an ownership interest in it. See United States v. Thornburg, 136 F.3d 1070, 1075 (6th Cir. 1998); United States v. Lui, 180 F.3d 957, 960 (8th Cir. 1999). Further, abandonment is determined on the basis of objective facts available to the investigating officers and not on the basis of the defendant's subjective intent. See United States v. Pablo Caballero-Chavez, 260 F.3d 863, 867 (8th Cir. 2001). In addition, the fact that an abandonment occurred in response to an investigation of illegal activity does not render it involuntary. See Caballero-Chavez, supra; see also United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). Based on the above, the undersigned concludes that the Defendant abandoned the weapon, and therefore, the seizure was lawful. The record shows that as Book caught up with the Defendant, the Defendant affirmatively removed the gun from his waistband and threw it with both hands out in front of him and away from the arresting officer. Thus, based on this evidence, which was uncontradicted, the undersigned concludes that the Defendant abandoned the weapon, and when Book later found it in the yard not far from where the Defendant was arrested, he lawfully seized the weapon.

In addition, as stated above the seizure of the drugs was based on probable cause given the Defendant's statement to Book, and, at any rate, would have been discovered eventually after the weapon was found. See Gates, supra. In addition, all other statements of the Defendant were made after the Defendant was advised of his rights fully, and waived his rights by talking to Book. No threats or promises were made to the Defendant to obtain any statements from the Defendant after his advice of rights were given, and the undersigned concludes that the statement was voluntarily made. Therefore, neither the statement nor any items seized from the Defendant should be suppressed.

## Conclusion

Therefore, the Defendant's motion to suppress evidence and statements should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion of Defendant to Suppress Evidence and Statements [Doc. #14--dated 12/5/07] be **denied**.

Further, the parties are advised that they have until May 5, 2008, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally, the trial of this matter is set on **June 2, 2008** at **9 a.m.** before the Honorable Rodney W. Sippel, United States District Judge, Courtroom 10-South.

/s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of April, 2008.